**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT MOSES WALDEN** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 18-3818** |
| **NANCY A. BERRYHILL,** | : | |
| **Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

## MEMORANDUM AND OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                    **April 22, 2019**

Robert Moses Walden, ("Plaintiff") filed this action to review the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381-1385 ("the Act"). This matter is before me for disposition, upon consent of the parties.[1] For the reasons that follow, Plaintiff's request for review will be DENIED.

## I.       PROCEDURAL HISTORY

Plaintiff protectively filed for SSI on March 9, 2015. (R. 10, 59). He alleged disability as of January 1, 2013, due in relevant part to gout, arthritis, high blood pressure, and a blood clot. (R. 59-60). The Social Security Administration denied his claim for benefits at the initial level of review. (R. 59-66). Following the denial, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on March 8, 2017. (R. 27-57). Plaintiff,

---

[1] In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to have the undersigned United States Magistrate Judge conduct proceedings in this case, including the entry of final judgment. (Consent and Order, ECF Nos. 4 and 6).

represented by an attorney, appeared and testified. *Id.* An impartial vocational expert ("VE") also testified at the hearing. (R. 45-56). On December 7, 2017, the ALJ issued a decision denying benefits under the Act. (R. 10-17). The Appeals Council denied Plaintiff's request for review, (R. 1-3), making the ALJ's decision the final decision of the Commissioner. Plaintiff commenced this action on September 6, 2018, and subsequently filed a Brief and Statement of Issues in Support of Request for Review. (ECF No. 11). Defendant filed a response, (ECF No. 12), and Plaintiff filed a reply brief. (ECF No. 13). The matter is now ripe for disposition.

## II.    LEGAL STANDARD

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 1382c (a)(3)(A). A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work. If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520, 416.920. The disability claimant bears the burden of establishing steps one through four. If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, the claimant is able to perform substantial gainful activities in jobs existing in the national economy. *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled so long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## III.     FACTUAL BACKGROUND

The Court has reviewed the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.

Plaintiff was forty-five years old on his alleged disability onset date. (R. 59). Plaintiff completed high school, and previously worked as a carpenter and cabinet maker. (R. 64-65). At

the time of the administrative hearing, Plaintiff lived alone in Philadelphia, Pennsylvania. (R. 178).

## A. Medical Evidence

### 1. Emergency Room Visits

Plaintiff presented at the Emergency Room of Lankenau Hospital ("ER") on January 1, 2014 due to a gout flare in his right elbow and right hand. (R. 345-348). He complained of moderate symptoms and admitted that the flare was triggered by beer drinking. (R. 345). He was prescribed Prednisone[2] and Indocin[3] and discharged with instructions to follow up with his primary care physician within one or two days. (R. 345-346). On January 7, 2014, Plaintiff returned to the ER because of a toothache. (R. 350-353). He was prescribed antibiotics and Motrin and referred to a dentist. (R. 351). Plaintiff again visited the ER on January 14, 2014 due to gout in his right great toe and left knee. (R. 355-358). Plaintiff admitted that he hadn't been taking his gout medication. (R. 355). He was again prescribed Prednisone and Indocin and discharged with instructions to follow up with his doctor. (R. 358). Plaintiff revisited the ER on January 23, 2014, with continuing complaints of gout in his left knee. (R. 360-364). He once again was prescribed Prednisone and Indocin, as well as Percocet for pain, and discharged. (R. 361). Treatment notes indicate Plaintiff was counseled regarding the need for follow-up with a physician. *Id.*

---

[2] Prednisone is a corticosteroid (cortisone-like medicine or steroid). It works on the immune system to help relieve swelling, redness, itching, and allergic reactions. *See* https://www.mayoclinic.org/drugs-supplements/prednisone-oral-route/description/drg-20075269.

[3] Indocin is a non-steroidal pain reliever used to treat swelling and stiffness due to gout, arthritis, bursitis, and tendonitis. *See* https://www.webmd.com/drugs/2/drug-9252-5186/indocin-oral/indomethacin-oral/details.

Plaintiff returned to the ER on February 24, 2014 for treatment for his chronic gout. (R. 366-367). He was again prescribed Prednisone and Percocet, and he was again counseled on the need to follow up with a physician. (R. 367). Plaintiff continued this course of action over the next two years - visiting the ER for his chronic gout – with additional visits in 2014 on March 7, March 27, April 14, May 8, May 23, June 7, June 19, July 12, July 23, August 14, September 14, and November 15. (R. 345, 350, 355, 360, 366, 371, 376, 381, 387, 398, 403, 408, 413, 418, 423, 428, 434, 439). Treatment notes indicated that the ER staff denied Plaintiff's request for narcotics on multiple occasions. (R. 424, 429, 440).

Plaintiff continued to frequent the ER in 2015 for treatment of his chronic gout, visiting on January 24, March 9, March 25, April 20, April 22, May 5, June 25, July 10, August 30, September 13, October 9, October 30, November 14, December 1. (R 444, 449, 454, 459, 464, 469, 521, 540, 554, 568, 581, 594, 614, 637). Treatment notes indicated Plaintiff regularly visited the ER and requested narcotic pain medication. (R. 616).

In 2016, Plaintiff continued to visit the ER for sciatica and gout. He was treated on March 7, March 30, April 9, April 20, June 20, July 3, September 8, September 25, November 4, November 27, and December 24. (R. 656, 671, 692, 699, 712, 725, 748, 770, 782, 796, 810). On several visits, Plaintiff requested Percocet for pain relief. (R 700, 811). Plaintiff was frequently advised to seek outpatient treatment and to visit a rheumatologist. (R. 713, 726).

Plaintiff presented to the ER in 2017 as well, visiting on January 9 and February 4 for gout flares. (R. 893-913). Plaintiff also visited the ER on March 3, complaining of both a gout flare and chest pain. (R. 916-937). Medical personnel recommended that Plaintiff undergo a CT scan of his chest and be admitted for observation, both of which he refused against medical advice. (R. 923). Plaintiff returned to the ER on July 15 for abdominal pain. (R. 938-1006). He

had a CT scan of his pelvis; the results were consistent with infectious colitis or inflammatory bowel disease and suspicious for Crohn's disease. (R. 1005-1006). Plaintiff was advised to have a colonoscopy to ensure a proper diagnosis. (R. 950)

### 2. Clinical Care Center

On January 20, 2015, Plaintiff visited the Lankenau Clinical Care Center ("Clinic"), complaining of increased swelling and pain in his right hand, plus right hip and left knee pain. (R. 259-265). Robert Cooper, D.O., noted Plaintiff's gout, and also noted that he hadn't followed up for his chronic condition. (R. 259). Dr. Cooper recommended Plaintiff follow-up with rheumatology, begin taking colchicine[4] to treat his gout symptoms, and follow-up with orthopedics for his right hip and left knee pain. (R. 261). Plaintiff reported to the Clinic again for a cardiovascular follow-up on February 26, 2015 following an ER visit for atrial flutter. (R. 252-258). Plaintiff was noted to be doing well and it was recommended that he begin anticoagulation therapy. (R. 252, 254). On March 5, 2015, Susan Burke, M.D. found Plaintiff's gout to be well controlled on allopurinol[5] and colchicine. (R. 246-251). She noted that Plaintiff had stopped drinking alcohol, and reported "feeling pretty good." (R. 246). Plaintiff had another cardiovascular follow-up on March 11, 2015 and was found to be tolerating anticoagulation therapy well. (R. 238-242).

---

[4] Colchicine is used to prevent or treat gout attacks (flares). Gout is caused by too much uric acid in the blood. When uric acid levels in the blood are too high, the uric acid may form hard crystals in the joints. Colchicine works by decreasing swelling and lessening the build-up of uric acid crystals that cause pain in the affected joints. *See* https://www.webmd.com/drugs/2/drug-8640/colchicine-oral/details.

[5] Allopurinol is used to prevent or lower high uric acid levels in the blood. Allopurinol is used to prevent or lower high uric acid levels in the blood. *See* https://www.mayoclinic.org/drugs-supplements/allopurinol-oral-route/description/drg-20075476.

On January 6, 2016 Plaintiff began treating at the Clinic with Kathryn Finley, M.D. for his left sided back pain and gout.  (R. 882-888).  Dr. Finley noted suspected non-compliance with gout medication, and also noted Plaintiff's request for pain medication.  (R. 882, 885).  Dr. Finley administered an injection into Plaintiff's left hip and left knee and prescribed physical therapy for Plaintiff's sciatica.  (R. 885).  Plaintiff attended only two of the sixteen initially recommended physical therapy sessions and was discharged for noncompliance.  (R. 1075, 1079).  He visited the clinic again on February 11, 2016 for anemia and gastrointestinal issues. The evaluating physician noted mostly normal results and advised Plaintiff to follow up with his cardiologist for clearance to have a colonoscopy performed.  (R. 876-881).  Dr. Finley indicated, on a follow-up visit on February 17, 2016, that Plaintiff's back pain had improved with physical therapy, and advised Plaintiff that he needs to continue with iron supplementation for anemia. (R. 872-875).  She referred him to a rheumatologist for treatment of his chronic gout and to a cardiologist for atrial flutter.  (R. 874).  Plaintiff treated with Dr. Finley again on April 4, 2016. (R. 868-871).  Dr. Finley noted that Plaintiff stopped going to physical therapy and therefore suffered increased back pain.  (R. 868).  Plaintiff admitted to not regularly taking the recommended iron supplement for anemia and failing to schedule an appointment with the rheumatologist.  *Id.*  Dr. Finley also noted Plaintiff's blood pressure was elevated due to non-compliance with prescribed blood pressure medication.  (R. 870).

At a follow-up appointment on May 13, 2016, Dr. Finley urged Plaintiff to return to physical therapy for back pain.  (R. 865).  She also noted that Plaintiff did not take the recommended iron supplement for anemia and that he rejected her offer of a steroid injection for pain relief in the left knee.  (R. 866).  She noted that Plaintiff had right hip pain, likely due to osteoarthritis or a benign cyst seen on previous imaging.  (R. 865).  At a clinic visit on May 26,

2016, Dr. Mayilvaganan noted that Plaintiff still hadn't seen his cardiologist or had the recommended colonoscopy procedure.  (R. 858, 860).

Plaintiff visited the Clinic on June 2, 2016 for pain in his left knee.  (R. 852-857). Randall M. Ramsay, D.O., diagnosed likely Chondromalacia Patellae[6] and mild early arthritis. Dr. Ramsay aspirated and injected cortisone into Plaintiff's left knee, and recommended Plaintiff attend physical therapy.  (R. 845).  Plaintiff saw Dr. Finley for a follow-up on July 18, 2016.  (R. 847-851).  Dr. Finley noted Plaintiff was using a cane for ambulation, and was complaining of lower back and left leg pain, and a gout flare in his hand.  (R. 847).  Plaintiff had still not followed up with a rheumatologist for his gout, and Dr. Finley recommended he follow up with pain management.  (R. 849).  Plaintiff next visited Dr. Finley seven months later, on March 22, 2017.  (R. 843-846).  Dr. Finley explained to Plaintiff, at length, that she could not help him to control his chronic medical conditions unless he treated regularly.  (R. 843).  He still had not been seen by a rheumatologist despite several referrals, had not had the recommended repeat colonoscopy, and had stopped taking iron for his iron deficient anemia.  *Id.*  Plaintiff followed up with Dr. Finley on April 5, 2017.  (R. 838-842).  He suffered another gout flare in both feet after completing a Prednisone taper.  (R. 838).  Dr. Finley prescribed another Prednisone taper.  (R. 840).  On May 4, 2017, Plaintiff presented for another gout flare.  (R. 835-837). Dr. Finley advised Plaintiff to take Colchicine to prevent gout flares, but he declined.  (R. 836).

Plaintiff was also seen for a GI follow-up that same day.  (R. 829-834).  Dr. Mayilvaganan found Plaintiff "clinically doing well" despite having missed GI appointments, and never following up for a repeat colonoscopy.  (R. 829).  Dr. Mayilvaganan scheduled

---

[6] Chondromalacia patellae, also known as "runner's knee," is a condition where the cartilage on the undersurface of the patella (kneecap) deteriorates and softens. This condition is common among young, athletic individuals, but may also occur in older adults who have arthritis of the knee.

Plaintiff for a colonoscopy to evaluate his iron deficiency anemia.  (R. 831).  Dr. Finley indicated on a May 17, 2017, follow-up, that Plaintiff's gout was under control with an increased dosage of allopurinol.  (R. 824).  Plaintiff disclosed that he struggled to avoid purine[7] rich foods which contribute to gout flares.  *Id.*

### B.    Lay Evidence

At the administrative hearing, Plaintiff testified that he last worked as a carpenter.  (R. 45-46).  He reported that he is unable to work due to his inability to sit or stand for long periods, arthritis in his hands and shortness of breath.  (R. 178).

## IV.    ALJ'S DECISION

Using the five-step inquiry described above, the ALJ determined that Plaintiff was not disabled.  (R. 12-17).

1.    At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity after his alleged onset of disability.  (R. 12).

2.    At step two, the ALJ found that Plaintiff suffers from the following severe impairments: cardiac dysrhythmia, gout, and essential hypertension.  (R. 12).

3.    At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. pt. 404, Subpt. P, App. 1.  (R. 13).

4.    At step four, the ALJ found that Plaintiff has the residual functional capacity to perform light work with the following limitations: occasionally perform all postural maneuvers, frequently stoop, and must avoid extreme cold, extreme heat, pulmonary irritants, chemicals, dust, and gases.  (R. 13).

---

[7]  Purine occurs naturally in the body, but it's also found in certain foods.  A gout diet may help decrease uric acid levels in the blood, and may lower the risk of recurring gout attacks and slow the progression of joint damage.  Purine rich foods include alcoholic beverages, red and organ meat, shellfish, and sugar sweetened foods and beverages.  *See* https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/in-depth/gout-diet/art-20048524.

5.     At step four, the ALJ found Plaintiff unable to perform any past relevant work. (R. 15).

6.     At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that in significant numbers in the national economy that Plaintiff can perform. (R. 16-17).

Accordingly, the ALJ found Plaintiff was not disabled. (R. 17).


V.     **DISCUSSION**

In his request for review, Plaintiff argues that the ALJ: (1) misinterpreted, failed to consider, or improperly discounted evidence of impairment; (2) failed to properly recognize the existence of medically determinable and severe impairments; and (3) violated SSR 82-59 by denying Plaintiff benefits for failure to follow prescribed treatment. (Pl. Br. 7-22, ECF No.11). The Commissioner counters that the ALJ properly analyzed the medical opinion evidence, and that substantial evidence supports the ALJ's decision. Having reviewed the parties' submissions, the record -- including the medical evidence and the hearing testimony -- and the ALJ's decision, this Court concludes that remand is not warranted.

A.     **The ALJ Properly Considered the Evidence of Impairment**

Plaintiff contends that the ALJ "did not provide an adequate explanation for why she relied on certain evidence while minimizing other evidence." (Pl.'s Br. 7, ECF No. 11). Specifically, Plaintiff objects to: (1) the failure of the ALJ to reference random statements from the record which ostensibly support a finding of disability; (2) the ALJ's summary of Plaintiff's continual ER visits for his chronic conditions, and (3) the failure of the ALJ to incorporate cane use into Plaintiff's RFC. I do not find Plaintiff's arguments persuasive.

An ALJ has an obligation "to hear and evaluate all relevant evidence in order to determine whether an applicant is entitled to disability benefits." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981). The ALJ must provide "not only an expression of the evidence [he] considered which supports the result, but also some indication of the evidence which was rejected." *Id*. at 705. This is necessary so that a reviewing court is able to understand the basis of the ALJ's decision, and determine whether the decision was proper. *Id*. at 707. However, the duty to develop the record does not require the ALJ to refer to every piece of evidence submitted. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."); *see also Phillips v. Barnhart*, 91 Fed. Appx. 775, 780 n.7 (3d Cir.2004) (agreeing with the Eighth Circuit in *Black*).

Plaintiff first argues that the ALJ should have noted: that the Social Security intake worker observed Plaintiff's discomfort after sitting for forty-five minutes; Plaintiff's benign right hip cyst, and Plaintiff's two self-reports of medication side effects. (Pl. Br. 7, ECF No.11). However, the ALJ is not required to refer to every bit of evidence in the record. *See Black*, 143 F.3d at 386. Further, this type of evidence, even if insufficiently considered, would not change the outcome of the ALJ's decision. Plaintiff's assertion as to the Social Security intake worker relates to a random comment by a clerical employee and was treated as such by the ALJ. As to Plaintiff's benign cyst and medication side-effects, nothing in the record compels a conclusion that Plaintiff suffers from any limitation greater than those found by the ALJ. In fact, Plaintiff's medication side effects were never mentioned in his treatment notes, and his benign hip cyst was never asserted to cause any functional limitations. The question on review is not whether Plaintiff can point to *any* evidence to support his position; rather, we must consider whether substantial evidence supports the ALJ's conclusions. *Jesurum v. Sec'y of Health & Human*

*Servs.*, 48 F.3d 114, 117 (3d Cir. 1995); *Allen v. Bowen*, 88 F.2d 37, 39 (3d Cir 1989). Plaintiff

is essentially asking the Court to re-weigh the evidence and arrive at a different conclusion.

However, this Court may not undertake a de novo review of the Commissioner's decision, nor

may the Court re-weigh the evidence of record. *Monsour Med. Cntr. v. Heckler,* 806 F.2d 1185,

1190 (3d Cir.1986), *cert. denied.,* 482 U.S. 905, 107 S.Ct. 2481, 96 L.Ed.2d 373 (1987). The

Court must simply review the findings and conclusions of the ALJ to determine whether they are

supported by substantial evidence, 42 U.S.C. 405(g); *Schaudeck,* 181 F.3d at 431.

     Next, Plaintiff takes issue with the ALJ's summary of Plaintiff's extensive ER visits for

his chronic conditions, contending that the ALJ thus failed to consider objective findings and

functional limitations. (Pl. Br. 10, ECF No. 11). Plaintiff thus contends that the ALJ's decision

is not supported by substantial evidence.

     Summarizing the voluminous ER records, the ALJ noted:

> [Plaintiff] has been to the emergency department multiple times for lower extremity pain
> and swelling, hand pain and swelling, and/or back pain…. On examinations, he generally
> had limited range of motion because of pain, as well as swelling and tenderness, but
> otherwise no motor deficit and no sensory deficit. Abnormal findings in the emergency
> visits were usually described as "mild."

(R. 15) (dates omitted). The ALJ's summary thus specifically acknowledged the objective

findings and limitations, noting that Plaintiff sometimes had swelling and pain-related limitations

in range of motion, but also noted that these abnormal findings were "mild" and not

accompanied by motor or sensory deficit. The ALJ further recognized that Plaintiff treated at the

emergency room for his chronic gout for years instead of regularly visiting his doctor stating,

"[Plaintiff] has not always been compliant with treatment, failing to follow-up regularly with his

treating provider, and going to the emergency department when having a gout flare." *Id*. The

ALJ's characterization of the ER records is accurate and is supported by substantial evidence.

As fully discussed above (*supra at pp. 12-13),* Plaintiff regularly visited the ER for gout flare-ups and back pain, and consistently failed to follow up with recommended treatment and testing. The repetitive reports of these visits were suitably and properly summarized by the ALJ. The ALJ is "not expect[ed] to make reference to every relevant treatment note in a case where the claimant ... has voluminous medical records." *Fargnoli v. Massanari,* 247 F.3d 34, 41–42 (3d Cir. 2001).

Finally, Plaintiff alleges that the ALJ erred in finding that Plaintiff was not prescribed a cane for ambulation, despite notations in the record of cane use. Plaintiff thus argues that the use of a cane should have been incorporated in crafting Plaintiff's RFC. (Pl. Br. 15-17, ECF No. 11). The Commissioner asserts that there is no cane prescription in Plaintiff's medical record, and therefore there is no requirement that it be incorporated in Plaintiff's RFC assessment. (Resp. 13).

I conclude that the ALJ did not err in his findings as they relate to cane usage. The ALJ noted that Plaintiff "alleges use of a cane, but there is no documentation in the medical record of such use." (R. 13). The ALJ additionally acknowledged Plaintiff's self-report that a cane was prescribed. (R. 14, 184). To establish that a hand-held device is medically required, there must be *medical evidence* establishing both the need for the device to aid in walking or standing and the circumstances under which the device is required. *See* SSR 96-9p, 1996 WL 374185, at *7. In *Howze v. Barnhart*, the Court of Appeals reviewed a reference by appellant's treating physician to a prescription for a cane, a report with the box for "hand-held assistive device medically required for ambulation" checked off by appellant's treating physician, and multiple references in the record to the appellant's use of a cane. *Houze v. Barnhart*, 53 Fed. App'x. 218, 222 (3d Cir. 2002). The Court of Appeals held the evidence was insufficient to support

appellant's allegations of his cane's medical necessity, and the ALJ was not required to address the cane use. *Id.* The Court noted that mere mention of a claimant's cane use is not enough, as isolated notations are insufficient to support a finding that a cane is medically necessary. *Id.*; *see also Starks v. Colvin*, 2017 WL 4053755, at *4 (E.D. Pa. Sept. 12, 2017).

Plaintiff asserts, "[I]n January 2016, his doctors recommended use of a cane for ambulation." (Pl. Br. 15). Plaintiff's supports this contention by citing to a January 2016 check the box form completed as part of a fall safety screen during Plaintiff's physical therapy initial evaluation. (R. 1085). That form lists twenty interventions for fall prevention; Plaintiff's form had two boxes checked: (1) Use assistive and mobility devices, and (2) schedule individual therapy sessions as appropriate. *Id.* This is insufficient evidence to support a finding that Plaintiff's cane was medically necessary. *See Houze*, 53 Fed. App'x at 222.

After an exhaustive review of Plaintiff's 1160-page medical record, I find that there has never been a cane prescribed for Plaintiff. In the extensive medical record, there are only eight instances where Plaintiff's cane use was noted by a treating physician. (R. 462, 726, 849, 882, 1085, 1110, 1126, 1148). The ALJ noted that Plaintiff testified at the administrative hearing that he uses a cane that was prescribed five years ago. (R. 14). However, neither the ALJ, nor I, found documentation of this cane prescription. And as noted above, the record is devoid of any explanation of the medical necessity of cane use. Therefore, I find that the ALJ correctly evaluated Plaintiff's cane use in determining Plaintiff's RFC, and his decision on this point is supported by substantial evidence. *See* SSR 96-9p, 1996 WL 374185, at *7. Accordingly, Plaintiff's request for remand on this basis is denied.

**B.    Plaintiff's Orthopedic Impairments and Obesity at Step Two**

Plaintiff next argues that the ALJ erroneously failed to find his orthopedic impairments and obesity severe at step two of the sequential analysis. (Pl.'s Br. 17-21).  In response, the Commissioner asserts that the ALJ considered all of Plaintiff's impairments, both severe and non-severe, in his overall analysis, proceeding beyond step two in the sequential analysis, and that the ALJ's RFC determination sufficiently reflects any limitations due to orthopedic impairments. (Resp. 5-7).  The Commissioner also argues that the evidence supports a finding that Plaintiff's obesity was not a severe impairment.  (Resp. 7-10).

At step two of the five-step sequential inquiry, an individual seeking benefits bears the burden of proving that he suffers from "a medically severe impairment or combination of impairments."  *See Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).  The step-two inquiry is a "*de minimis*" screening device to dispose of "groundless claims."  *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360-61 (3d Cir. 2004) (quoting *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003)).  An impairment is severe if it significantly limits the claimant's physical or mental ability to do "basic work activities."[8]  20 C.F.R. § 404.1520(c).  A severe impairment is distinguished from "a slight abnormality," which has such a minimal effect that it would not be expected to interfere with the claimant's ability to work, regardless of her age, education, or work experience.  *See Bowen*, 482 U.S. at 149-51.  Plaintiff retains the burden of showing that an impairment is severe. *Id*. at 146 n.5.

---

[8]  The mental ability to do "basic work activities" requires "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting."  20 C.F.R. §§ 404.1521(b), 416.921(b).

Failing to find an impairment severe is harmless error when the ALJ does not deny benefits at this stage and properly considers the condition in the remaining analysis. *See Rutherford v. Barnhart*, 399 F.3d 546, 552–53 (3d Cir. 2005) (failing to determine the severity of a condition at stage two was harmless because the ALJ properly considered it in the evaluation of the claimant's limitations); *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 145 n.2 (not precedential) ("Because the ALJ found in [Plaintiff's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.") (citing *Rutherford*, 339 F.3d at 553).

### 1.    Orthopedic Impairments

Plaintiff asserts that the ALJ erred by not finding that Plaintiff had severe orthopedic impairments based on Plaintiff's right hip, left knee, back and sciatica pain. (Pl. Br. 17-20). While Plaintiff is correct that the ALJ did not find these impairments severe, I find that failure to do so does not warrant remand. The ALJ found Plaintiff to suffer from other severe impairments. She thus proceeded through the remaining steps of the sequential evaluation and addressed Plaintiff's orthopedic impairments in her overall analysis. In determining Plaintiff's RFC, the ALJ noted Plaintiff's right hip and left knee pain was primarily caused by his gout, and found that his symptoms were with proper medication management. (R. 14-15). The ALJ also described Plaintiff's emergency room visits for lower extremity, back and sciatica pain, finding that the pain at times limited Plaintiff's range of motion, but that he suffered no motor or sensory deficits, and any abnormal findings were described as mild. (R. 15). The ALJ accounted for Plaintiff's orthopedic impairments in the RFC assessment by limiting him to light work with only occasional postural maneuvers and the ability to stoop frequently. (R. 13)

Therefore, I find that the ALJ's failure to find Plaintiff's orthopedic impairments severe at step two is harmless because she properly considered them in the overall evaluation of Plaintiff's impairments.  *See Rutherford*, 339 F.3d at 553; *Salles*, 229 Fed. App'x at 145. Accordingly, I respectfully recommend that Plaintiff's request for remand on this basis be denied.

### 2.  Obesity

Plaintiff also asserts that the ALJ erred by failing to find that his obesity was a severe impairment and by failing to consider the impact of Plaintiff's obesity in evaluating his RFC. (Pl. Br. 20-21, ECF No. 11).  The Commissioner counters that substantial evidence supports the ALJ's finding that Plaintiff's obesity is non-severe and does not cause greater functional limitations than those included in the ALJ's RFC determination.  (Res. 7-10, ECF No. 18).

The ALJ addressed Plaintiff's obesity at step two:

> [Plaintiff] is diagnosed with obesity, but there is no documentation of specific treatment for obesity other than recommendations for diet and exercise.  There are no physical examination findings in the record that suggest that obesity limits [Plaintiff].  Therefore, I find that [Plaintiff's] obesity causes minimal to no limitations in his ability to perform basic work-related tasks, and is nonsevere.

(R. 12-13).  There is substantial evidence in the record to support the ALJ's conclusion. Treatment notes recognize non-morbid obesity[9] as a diagnosis only.  The record is devoid of evidence to support a finding that Plaintiff is functionally limited in any way due to obesity. Further, Plaintiff has failed to allege obesity as a basis for disability and the record does not support any obesity-related work limitation.  *Rutherford*, 399 F.3d. at 552-53.  In *Rutherford*, the plaintiff, who was 5'2" and 245 pounds, had not raised obesity as a limitation, but argued

---

[9]  Non-morbid obesity is low to moderate risk obesity.  Morbid obesity, on the other hand, is characterized by a BMI over 40 and a weight over 100 pounds above recommendation. See https://medlineplus.gov/ency/patientinstructions/000348.htm.

nevertheless that the ALJ erred in failing to consider obesity throughout the disability determination. *Id.* The court concluded that remand was not required because neither Rutherford's own testimony nor the medical evidence available indicated that her obesity contributed to her inability to work. *Id.* (citing *Skarbek v. Barnhart*, 390, F.3d 500, 504 (7th Cir. 2000)).

Like the plaintiff in *Rutherford*, Plaintiff did not allege obesity as a basis for his disability. He did not mention obesity at the hearing before the ALJ, nor did he testify that his weight limits his ability to engage in work-related activities. Likewise, none of Plaintiff's treatment notes referred to Plaintiff's weight in connection with functional limitations. Because neither Plaintiff's own testimony nor the medical evidence indicated that his obesity contributed to his alleged inability to work, the ALJ's failure to find obesity to be severe is not a basis for remand. *See Rutherford*, 399 F.3d at 553; *Suarez v. Astrue*, 996 F. Supp. 2d 327, 332 (E.D. Pa. 2013) (remand not necessary where ALJ failed to analyze the impact of plaintiff's obesity on her functional abilities because the evidence would not support a conclusion that her obesity rendered her unable to work). Therefore, I find that substantial evidence supports the ALJ's decision that Plaintiff's obesity is a non-severe impairment. Plaintiff's request for remand on this basis is denied.

### C.    Failure to Follow Prescribed Treatment

Plaintiff asserts that the ALJ violated SSR 82-59 by denying Plaintiff benefits based on failure to follow prescribed treatment. (Pl. Br. 21-22, ECF No. 11). The Commissioner counters that SSR 82-59 does not apply to this case. I agree with the Commissioner.

Ruling 82–59 provides, "Where the treating source has prescribed treatment clearly expected to restore ability to engage in [substantial gainful activity (SGA)], but the disabled

individual is not undergoing such treatment, appropriate development must be made to resolve whether the claimant ... is justifiably failing to undergo the treatment prescribed.... The claimant ... should be given an opportunity to fully express the specific reason(s) for not following the prescribed treatment." SSR 82–59, 1982 WL 31384, at *2 (S.S.A.1982). The Ruling further provides, "[The] SSA may make a determination that an individual has failed to follow prescribed treatment only where the following conditions exist: the evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity (SGA), or in the case of a disabled widow(er) that the impairment meets or equals the Listing of Impairments in Appendix 1 of Regulations No. 4, Subpart P ..." *Id.* at *1. Thus, SSR 82–89 only applies where the ALJ has determined that an individual's impairments preclude him from engaging in substantial gainful activity, i.e. an individual who would otherwise be found to be disabled under the Act. *See* 42 U.S.C. § 423(d)(1)(A) (defining "disability" under the Social Security Act as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment").

In the instant case, because the ALJ found that Plaintiff does not have a disabling impairment, Ruling 82–59 is not applicable here. *See also Thomas v. Barnhart,* No. 02–2958, 2003 WL 21419154, *5 (E.D.Pa. June 11, 2003) (finding SSR 82–59 did not apply to an individual who was found not to have a disabling impairment).

However, it is appropriate for the ALJ to evaluate Plaintiff's statements about the intensity and limiting effects of his symptoms and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence in the record. *See* SSR 16-3p, 2017 WL 5180304, at *2. It is well established that "the failure to follow through with prescribed courses of treatment is a factor that the ALJ may consider in assessing the

severity of an impairment." *See Honkus v. Colvin*, No. 13-1830, 2015 WL 225391, at *16 (W.D. Pa. Jan. 16, 2015). "[A]n ALJ may consider a claimant less credible if the individual fails to follow the prescribed treatment plan without good reason." *See Vega v. Comm'r of Soc. Sec.*, 358 Fed. App'x. 372, 375 (3d Cir. 2009).[10]

The ALJ noted that Plaintiff: refused anticoagulation therapy after a gastrointestinal bleed; left the hospital without treatment and against medical advice; utilized the emergency room for treatment instead of seeing his regular doctor; didn't continue physical therapy or injections for back pain; and was non-compliant with prescribed medication. (R. 14-15). In any event, it was not Plaintiff's noncompliance with treatment that formed the basis for denial of benefits; instead, it was his residual functioning capacity to perform a limited range of light work. As noted above, assessing a plaintiff's residual functioning capacity requires evaluating the severity and persistence of the plaintiff's symptoms. If a plaintiff ignores treatment prescribed to relieve his symptoms, it follows that his symptoms may not be severe or persistent. In this case, Plaintiff consistently disregarded medical advice prescribed to assuage his symptoms. Because an ALJ is permitted to consider noncompliance when considering a Plaintiff's assertions and developing the RFC, the ALJ's finding here was proper and supported by substantial evidence. *See Vega*, 358 Fed. App'x at 375. Accordingly, Plaintiff's request for remand on this basis is denied.

---

[10] Both *Honkus* and *Vega* were decided while SSR 96-7 was still in effect. SSR 96-7 previously required the ALJ to assess the credibility of a plaintiff's statements about pain and other symptoms and its functional effects. *See* SSR 96-7, 1996 WL 374186. Effective March 28, 2016, SSR 16-3p superseded SSR 96-7p. SSR 16-3p eliminates the use of the term "credibility", but otherwise makes no change to the Commissioner's underlying policy about evaluation of a plaintiff's symptoms.

## VI.     CONCLUSION

For the reasons set forth above, I find that the ALJ's findings are supported by substantial evidence.  Accordingly, Plaintiff's request for review is **DENIED**.  An appropriate Order follows.

BY THE COURT:


      /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE